UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA M. BELDEN,

          Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of Social Security,

          Defendant.

CASE NO.   C04-5300KLS

ORDER REVERSING THE COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

    Plaintiff, Donna M. Belden, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits.  The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13.  After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

    Plaintiff currently is fifty-two years old.[1]  Tr. 24.  She completed the eighth grade and has no past relevant work experience. Tr. 14, 69.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

On April 16, 2001, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 2000, due to carpal tunnel syndrome in her right hand, migraines, panic attacks, and neck and shoulder pain. Tr. 13-14, 55-60. That application was denied initially and on reconsideration. Tr. 13, 24-29, 32-34.

Plaintiff requested a hearing, which was held before an administrative law judge ("ALJ") on July 2, 2003. Tr. 209. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 209-51. On November 14, 2003, the ALJ issued an opinion, finding plaintiff not disabled. Tr. 22-23. Specifically, the ALJ found in relevant part that:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of left carpal tunnel syndrome, mild migraines, degenerative disc disease of the cervical spine, shoulder pain, psychotic disorder, and anxiety disorder;

(3) at step three, plaintiff's mental impairments did not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff retained the residual functional capacity to perform a modified range of light work, but had no past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 22. On March 26, 2004, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 4-6; 20 C.F.R. § 416.1481.

On May 25, 2004, plaintiff filed a complaint with this court seeking judicial review of the ALJ's decision. (Dkt. #1). She argues that decision should be reversed and remanded for further administrative proceedings because the ALJ erred in assessing her residual functional capacity. For the reasons set forth below, the undersigned agrees.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

ORDER
Page - 2

1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    <u>The ALJ Incorrectly Assessed Plaintiff's Residual Functional Capacity</u>

To determine whether a claimant is entitled to benefits, the ALJ engages in a five-step sequential disability evaluation process. 20 C.F.R. § 416.920. If, at step three of this evaluation process, a disability determination "cannot be made on the basis of medical factors alone," the ALJ then must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. The claimant's residual functional capacity assessment thus is what he or she "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. The ALJ, therefore, must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> I find that the claimant retains the following residual functional capacity: the claimant can only lift ten pounds frequently or twenty pounds occasionally. She can only perform simple, repetitive tasks with no public contact and limited contact with co-workers. She would have some manipulative limitations in her left, non-dominant hand.

Tr. 20. Plaintiff argues the above assessment understates or ignores certain mental functional limitations that were found by Dr. Linda Miller, an examining physician, and John Robinson, Ph.D., a non-examining consulting physician. As such, plaintiff asserts, the ALJ's assessment is not an accurate reflection all of her mental functional limitations.

Dr. Miller opined in late September 2001, as follows:

> Due to the symptoms of the claimant's mental illness, it would probably be difficult for

>her to perform detailed and complex tasks, interact with coworkers and the public, perform work activities on a consistent basis, maintain regular attendance in the workplace, complete a normal workday or workweek and deal with the usual stress encountered in competitive work.

Tr. 109.  As noted above, the ALJ included the first two of these limitations in his assessment of plaintiff's residual functional capacity.  In early October 2001, Dr. Robinson found plaintiff moderately limited in her ability to: perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek; and perform at a consistent pace.  Tr. 123.  Plaintiff argues that the ALJ's assessment of her residual functional capacity erroneously omits any reference to the limitations found by Dr. Robinson, as well as the other limitations found by Dr. Miller.

 With respect to the opinions of Drs. Miller and Clifford, the ALJ found as follows:

>In reviewing the analysis from Dr. Miller and the State Agency physicians, I find that the claimant's limitations in dealing with stress and in completing workdays relate to more detailed and complex tasks, as she is able to perform simple tasks such as crossing guard work.  She is also able to interact with people on some basis as she has demonstrated by attending her daughter's activities and being a crossing guard.  Dr. [Joy Ruiz-]Molleston is the claimant's treating physician, but the claimant rarely mentions any mental impairments and Dr. [Ruiz-]Molleston does not note them often in her treatment records.  In 2002, the claimant mentioned panic attacks once (Exhibit 13F, p.15).  She mentioned them twice in 2003 and in response Dr. Molleston prescribed Zoloft.  If the claimant truly felt limited by her mental impairments, I believe that she would mention them to her doctor.  If she was truly limited by mental impairments, her treating doctor would notice symptoms of anxiety and note them in her treatment notes.

Tr. 19-20.  Contrary to the ALJ's above findings, however, neither Dr. Miller nor Dr. Clifford indicated plaintiff's limitations in dealing with stress and completing a normal workday and workweek were related to her difficulty in performing more detailed and complex tasks.  See Tr. 105-09, 122-37.  Rather, it appears that both physicians found her to have these limitations in addition to her restriction to performing simple, repetitive tasks.  Further, it is not at all clear how plaintiff's ability to interact with people bears on her ability to: perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek; perform at a consistent pace; or deal with the usual stress encountered in competitive work.

 In addition, the record does show that plaintiff reported her mental health-related symptoms to her treating physician, and that her treating physician noted them in her treatment notes. Tr. 150-51, 163, 170, 172, 176, 183, 185-89, 192.  Plaintiff also reported her symptoms to Dr. Miller and Dr. Eileen Bailey, who examined her as well.  Tr. 105, 110.  Indeed, as noted by the ALJ, Dr. Ruiz-Molleston prescribed plaintiff

ORDER
Page - 4

Zoloft for her panic attacks, which one would not expect a treating physician to do unless panic-related symptoms were evident. In sum, the ALJ's reasons for not adopting all of the mental limitations found by Drs. Miller and Clifford are not supported by the substantial evidence in the record.

Defendant argues that although the ALJ did not accept all of the state agency physicians' findings regarding plaintiff's non-exertional limitations, the ALJ noted in her decision that plaintiff's "minimal findings" did not support such limitations. <u>See</u> Defendant's Brief, 7-8 (citing Tr. 15-20). It is true the ALJ did state that the "[c]onsultative doctors for the state agency" found plaintiff "could be expected to handle workplace changes." Tr. 16. Apparently, while not stating so expressly, the ALJ was referring to a finding made by Dr. Robinson. <u>See</u> Tr. 125. However, the ALJ did not state whether or why he was giving this finding more weight than the other limitations found by Dr. Robinson, or those of Dr. Miller, who, unlike Dr. Robinson, was an examining physician. As discussed above, furthermore, the specific reasons the ALJ did provide for rejecting those limitations were insufficient. In addition, while it is also true Dr. Robinson did not believe plaintiff to be impaired to the degree indicated by Dr. Miller with respect to her ability to perform activities on a consistent basis (Tr. 125), nevertheless, he too felt plaintiff was at least moderately limited in this area (Tr. 123).

Defendant also argues the ALJ properly found the opinions of Dr. Miller and Dr. Robinson to be brief and conclusory opinions, submitted in part on "check-the-box" forms, unaccompanied by any medical findings, and, therefore, unsupported by the evidence in the record. Defendant's Brief, p. 9. An ALJ need not accept the opinion of a physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989); <u>see also</u> <u>Murray v. Heckler</u>, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). As discussed above, however, the ALJ did not provide these as reasons for rejecting the specific mental functional limitations found by Drs. Miller and Robinson. The diagnoses and observations of professionals trained in the field of psychopathology, furthermore, constitute competent evidence when mental illness is the basis of a disability claim:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental

ORDER
Page - 5

> disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)) (emphasis added); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence).

Lastly, defendant argues the ALJ properly rejected the mental limitations found by Dr. Miller and Dr. Robinson, because it appears those physicians based their opinions on plaintiff's subjective complaints, which the ALJ found to be not fully credible. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). While it is true that the ALJ did find plaintiff not fully credible (Tr. 19), and that plaintiff has not challenged the ALJ's credibility findings, the ALJ did not give this as a reason for discrediting the opinions of Drs. Miller and Robinson. Indeed, Dr. Robinson himself noted plaintiff had issues with credibility (Tr. 125), and yet still found her to have the above limitations (Tr. 123).

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the

medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

The ALJ posed the following hypothetical question to the vocational expert:

> This person would be able to stand and walk and sit in an eight-hour day six of an eight-hour day. Actually, eight for standing and walking, six for sitting. She should be able to lift and carry ten pounds frequently, 20 pounds occasionally. She has manipulative limitations on her left hand with feeling, grasping, and fingering, secondary to symptoms of carpal tunnel. She would be limited to performing simple and repetitive tasks. She should have limited contact with co-workers, no contact with the general public.

Tr. 244. Based on this hypothetical question, the vocational expert found a number of jobs existing in significant numbers in the national economy plaintiff could still perform. Tr. 244-45. The ALJ adopted these findings. Tr. 21-22. Because, as discussed above, the ALJ erred in excluding from his assessment of plaintiff's residual functional capacity the mental limitations found by Dr. Miller and Dr. Robinson, the hypothetical question posed to the vocational expert failed to accurately convey all of plaintiff's mental limitations as well. As such, at step five, the ALJ erred in finding plaintiff capable of performing other jobs existing in significant numbers in the national economy.

II.     This Case Should Be Remanded for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because questions remain as to whether plaintiff is capable of performing other jobs existing in significant numbers in the national economy, remand to the Commissioner for further administrative proceedings in accordance

with the findings contained herein is appropriate.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, the ALJ's decision is reversed, and this matter is remanded to the Commissioner for further administrative proceedings in accordance with the above findings.

DATED this 15th day of July, 2005.

                                      Karen L. Strombom
                                      United States Magistrate Judge